**CITY OF SNYDER, Appellant,**

v.

**W. Prentis BASS, Appellee.**

**No. 3745.**

Court of Civil Appeals of Texas.

Eastland.

Sept. 7, 1962.

Rehearing Denied Sept. 28, 1962.

Saner, Jack, Sallinger & Nichols, Dallas, Blanchard, Carroll & McLaughlin, Snyder, for appellant.

Key, Carr, Carr & Clark, Lubbock, Gene L. Dulaney, Snyder, for appellee.

COLLINGS, Justice.

W. Prentis Bass brought suit against the City of Snyder seeking to recover the value of street pavement and sewer lines placed in a subdivision while it was outside the city limits. Plaintiff was the developer of the subdivision and brought this suit after

the area had been annexed by the city. He also sought a mandatory injunction to require the city to extend certain water lines within the subdivision and to have the court hold void an ordinance of the city.

The court denied plaintiff any injunctive relief but granted him judgment against the city for the sum of $14,329.00, the value of the street paving and sewer lines as found by the jury. The court found, as a matter of law, that the annexing of said subdivision by the city constituted a taking of plaintiff's property which required compensation to be paid him under Section 17, Article I, of the Texas Constitution, Vernon's Ann.St. The city of Snyder has appealed from the judgment against it and W. Prentis Bass has appealed from that portion of the judgment adverse to him.

In several points City of Snyder contends that the court erred in entering a judgment for the plaintiff and in not entering judgment for appellant city because, as a matter of law, there is no liability on the part of a city for the value of improvements placed upon public streets or alleys by a developer at a time when said streets or alleys were a part of the public thoroughfare of the county and that the annexation of such a subdivision at a later date does not amount to a taking of property belonging to such subdivider.

In this connection the evidence showed that in 1955, appellee W. Prentis Bass owned certain undeveloped real property near the city limits of the City of Snyder. He made application to the City for his property to be annexed but the city declined because it was not adjacent to the city limits, that is, a 60 foot roadway owned by another developer separated appellee's land and the city, and the city at that time had a policy against involuntary annexation. In 1956, while said property was outside the city limits, Bass filed the plat of said addition with the County Clerk. On June 4, 1956, the subdivision was re-platted and the re-plat was approved. At the time this plat was filed appellee dedicated to the public the streets and alleys shown thereon. In 1958 or 1959, Bass installed in said addition the sewer line in question. Although it was outside the city limits, the line was constructed according to the city's specifications and was permitted to be tied to the city's main. The sewer lines are still being used for the purpose for which they were installed, that is, for the convenience and use of the people within said subdivision. The evidence further shows, that after the addition was platted and while it was outside of the city, Bass installed approximately 1600 feet of paving and that such paving was done at his expense, and was not required to be done by the city. At the time of the refusal by the city to annex the Bassridge Addition in 1955, the city had a policy of reimbursement of developers for sewer lines laid out in new additions. This policy was changed on October 1, 1956, by an ordinance of the city.

Appellee Bass testified that in 1959, he made demand to the City Council that they either pay him for the improvements he had installed in his subdivision or not annex his territory. He stated that the City Council refused his request for payment and that they thereafter annexed the subdivision on December 28, 1959. Appellee testified that the subdivision was originally platted into 43 lots; that he sold 19 lots and had 24 left in addition to 2 blocks which could be platted into 9 more lots. Appellee stated that he purchased the approximately 30 acres which he platted as the Bassridge Addition in 1955, and paid $1,000.00 per acre for the property; that at the time it was purchased and at the time the subdivision was platted it was not within the City limits of Snyder. He further stated that as a part of the dedication, when he filed the plat of said subdivision, he dedicated the streets, alleys and easements as shown on the plat and that such dedication was voluntarily made by him so that the City of Snyder would supply water to his subdivision. At the time of the dedication of said streets and alleys the property involved was situated in the county but was not within the City of

Snyder. No dedication was made to the city. Appellee testified that he was merely making a dedication to the public as shown on the plat of dedication. He further testified that after he made the dedication he elected to pave some streets in the subdivision and did this in order to make them nicer to travel on for the convenience and benefit of his customers. Appellee stated that he sold lots in his addition for various amounts; that one lot sold for $3,250.00, one for $3,500.00, and when he sold such lots he obligated himself to put in utilities, which included either a septic tank or a sewer system and further obligated himself to pave the streets in said subdivision; that he sold 19 lots and, as to the lots sold, he was obligated to pave the streets, furnish water and sewer, and that the water, sewer lines and street paving were put in by him for the benefit of people who were buying lots in his subdivision. Appellee testified that in determining the price at which he would sell his lots he considered how much he had paid for street paving and the amount spent for sewer lines; that each of these factors was considered by him together with the cost of the land and the profit he desired to make in determining the price he would ask for any particular lot. Appellee stated that in selling the lots he was recouping his investment which included the cost of his land, paving, water and sewer lines and profit. He stated that he had sold 19 lots in the subdivision for $48,800.00, and that such lots cost $44,650.00, thereby showing a profit of $4,150.00 on the 19 lots. Appellee stated that at the time he paved the streets in 1957 or '58, he did so with the idea that it would help sell the lots, and that his idea or intention was the same when he put in the sewer lines; that it was his intention to prorate the cost of such paving and sewer lines in the sale price of the lots. Appellee testified that at the time he installed the street paving and sewer lines, he knew that the City of Snyder had no reimbursement policy for the expense incurred by a developer in such an improvement; that prior to the time the area was annexed by the city he had paved the streets and they were being used by the public generally and that after the area was annexed to the city, the streets continued to be used for the same purpose and that the city had never tried to interfere with the use of such public streets after annexation; that the sewer lines which had been installed by him prior to the annexation were likewise used by the public generally both before and after the area was annexed to the city. In the sale of the 19 lots out of said subdivision appellee Bass did not make any reservation of title to the sewer mains in the deeds of conveyance, nor did he reserve any title to any portion of the streets, alleys or sewer system.

Appellee urges that the court properly enter judgment against the City of Snyder for the value of the street paving and sewer lines; that the annexation of the area by the city and its subsequent use and control of the improvements installed by him amounted to a taking of appellee's property for public use without compensation. Appellee contends that by dedicating the streets and alleys to the public in 1955, he did not give up title to the pipe lines and pavement installed by him in 1958 and 1959; that a dedication of streets to the public is the giving of an easement only and that the fee title remained in him as the dedicator even in the absence of an express reservation. He urges that he did not dedicate such improvements to the city; did not consent to an annexation without compensation and has exercised no use of the property in question inconsistent with the dedication he made to the public. Appellee urges that since the annexation the city has controlled and used the sewer line; that it controls and orders repairs of the pavement, and that the city, by its City Manager, has admitted that through the use of appellee's sewer lines and pavement it is performing its Charter obligation to provide pavement in new annexed additions. Appellee contends that his property has been taken by the City and that the court

properly held he was entitled to compensation therefor. We cannot agree with this contention.

■ The evidence shows conclusively that appellee Bass filed a plat of the Bassridge Addition in 1955, and dedicated the streets, alleys and easements as shown on the plat to the use of the public; that he sold lots out of said subdivision and executed deeds in which he was obligated to pave the streets, furnish water and sewer lines and street paving. He then made application to the City to annex his addition but his request was refused. The city did agree to permit him to tie his sewer lines to the city's main if constructed according to the city's specifications. The City also agreed to and did supply water to his subdivision. Under these circumstances appellee installed the sewer lines and paving in his addition at his own expense. Appellee's contention that the action of the City in thereafter annexing his subdivision constitutes a taking of his property without compensation is, in our opinion, fully answered by the holding in Hightower v. City of Tyler, Tex.Civ.App., 134 S.W.2d 404, (Writ Ref.), in which the court stated as follows:

"Having connected the water and sewer lines with the City's system for such service and received such service, and the City having put the lines to no other use than that contemplated by appellants, and the record showing that appellants made no reservation of any interest or right of use of the lines, we think it necessarily follows that Appellants gave consent to the City to make such use of the lines as was made.

"Consent is an act of the will. It need not be written, but may be spoken, or acted, or it may be implied. Volume 15, C.J.S., Consent, page 979, and authorities under note 83."

Appellee's contention that his act in dedicating streets and alleys to the public in 1955 did not deprive him of title to pipes and pavement laid in 1958 and 1959, is likewise not well taken. This contention is answered in Moser v. Greenland Hills Realty Co., Tex.Civ.App., 300 S.W. 177, (Writ Ref.). In that case a developer had attempted to reserve ownership of the sewer and other utility lines installed in his addition and the court stated as follows:

"If it be said, however, that, after exhausting this implied power, appellee still retained ownership in the sewer system and could sell to whomsoever it pleased the privilege of making connection from the outside, or exercise other acts of ownership and control, it occurs to us that the reservation took from the city control and supervision of the system, and materially interfered with the usual exercise of the police power of its officials. * *

"We are of the opinion, therefore, that the only interest in the sewer mains that was retained by appellant to itself, its successors and assigns, by the reservation contained in the instrument of dedication executed under the circumstances, was the right to connect resident lots of the addition to the system. However, if we should accept the view of the appellee, that the legal effect of the reservation was to retain title to the sewer mains to itself, its successors and assigns, certainly it was stripped of all interest when it parted with title to the lots served by the system, and its power over the subject-matter of litigation was thereby exhausted. Furthermore, the assertion of private ownership over the sewer mains necessarily took from or materially impaired the usual exercise of police power by city authorities over the sewer system and involved the exercise of powers by the corporation in excess of the purpose clause of its charter, and for these reasons we are of the opinion the reservation must be condemned as being in contravention of public policy."

As hereinbefore indicated Mr. Bass is still the owner of a portion of the lots in the Bassridge Addition. When he filed the plat for this addition, he entered into a contract with the City whereby he agreed to and did install a portion of the water lines in said addition at his own expense and agreed that the water line was to become the property of the City. Bass sought, in this suit, to require the City to extend the water lines in said addition so they will be adjacent to each of the lots therein. The City declined to extend its water lines within the addition contending that the extension of such lines therein was the responsibility of the developer.

The trial court refused to order the City to extend its water lines to the unserved lots. Bass has appealed from this portion of the judgment and contends that the City has a mandatory duty to extend water lines within the subdivision under the provisions of Section 9 of the Home Rule Charter of the City of Snyder which provides as follows:

"By annexing the territory under the provisions of this section, the City of Snyder shall assume an obligation, and from the time of such annexation shall be obligated, to furnish the facilities of the City, including; but not limited to, water, sewer and street maintenance to the inhabitants of such territory with reasonable diligence, both as to time and as to the extent of such facilities furnished."

█ The court properly refused to require the City to extend the water line now existing in the Bassridge Addition, although the city has the responsibility to furnish water to the inhabitants of the City. This service is subject to reasonable regulations promulgated by the City. The Charter does not require the City to furnish all extensions of water mains desired by a property owner, but only to furnish such facilities with reasonable diligence. In the case of Crouch v. City of McKinney, 47 Tex.Civ.App. 54, 104 S.W. 518, the obligation of a city to furnish utility service and extend lines therefor was discussed by the court and it was therein stated that the government of a City is entrusted to its officials selected for that purpose and so long as such governmental affairs are conducted in a reasonably judicial manner, the acts of the officials will not be interfered with. It was indicated concerning the duty of a city to extend water lines that the matter should be left to the sound discretion of the City Council. This matter is also discussed in 48 A.L.R.2d 1224, where it is stated that the majority rule is that a city in such cases has the right to exercise its discretion in a reasonable manner. Also see Gillam v. City of Fort Worth, Tex.Civ. App., 287 S.W.2d 494, (Ref. N.R.E.).

The judgment is therefore affirmed insofar as it refused injunctive relief requiring the City of Snyder to extend its water lines in the manner sought by Bass. The judgment against the City for $14,329.00 is reversed and judgment rendered in favor of the City.