407 So.2d 348 (1981)
Thomas MILLS and Kennenth Schrimsher, Appellants,
v.
Ann DOYLE, Appellee.
No. 81-252.
District Court of Appeal of Florida, Fourth District.
December 16, 1981.
*349 Richard L. Oftedal, West Palm Beach, for appellant, School Bd. of Palm Beach County.
Richard H. Frank and Mark F. Kelly of Law Offices of Frank, Chamblee & Kelly, P.A., Tampa, for intervenors/appellants.
Florence Beth Snyder, West Palm Beach, for appellee.
Jim Smith, Atty. Gen., and Frank A. Vickory, Asst. Atty. Gen., Tallahassee, for amicus curiae.
DOWNEY, Judge.
The issues presented by this appeal involve the application of Chapter 119, Florida Statutes (1981), commonly known as the Public Records Act.
Appellee, Ann Doyle, a newspaper reporter for the Palm Beach Post, requested the appellants to allow her to inspect a grievance filed against the Palm Beach County school system by Warren G. Cutts, a county school teacher. When access to said record was refused counsel for Doyle made written demand upon the School Board to allow access to any written grievance filed by Cutts for the year 1980 and to "any material contained in the file relating to such grievance or grievances." An attorney for the School Board responded that: a) the School Board's contract with the Classroom Teachers Association (CTA) (the bargaining agent for the classroom teachers) mandated that such material be kept confidential; b) the CTA had threatened to file a grievance against the Board if Doyle's request were complied with; and c) the CTA contended that Cutts had a constitutional right of privacy prohibiting exposure of the grievance filed by him. The Board's counsel advised that until these issues could be resolved by the courts the Board felt compelled to refuse Doyle's request. Thereupon, Doyle filed a petition for writ of mandamus in the circuit court to require appellants, the Superintendent of Public Instruction for Palm Beach County and the Palm Beach County School Personnel Manager, respectively, to comply with the mandate of Chapter 119, Florida Statutes. The alternative writ and rule to show cause issued returnable on January 29, 1981, at which *350 time the circuit court also heard argument on appellants' motion to quash or dismiss the petition and alternative writ. Appellants based their motion on the CTA  School Board collective bargaining agreement, Cutts's constitutional right of privacy, and Cutts's and the CTA's purported status as indispensible parties. Although no evidence was adduced at said hearing, arguments of the parties and of Cutts and the CTA were heard. Doyle indicated no objection to intervention by Cutts and the CTA; however, the latter parties did not request leave to intervene.
The trial court entered a peremptory writ of mandamus commanding appellants to "open their records for inspection in accordance with Florida Chapter 119 ... and afford the Petitioner the opportunity to inspect the records pursuant to Florida Statutes." The court also reserved jurisdiction to determine whether attorneys' fees were assessable.
Appellants' first contention on appeal is that the trial court erred in failing to dismiss the alternative writ for failure to join indispensible parties. We hold that this contention does not demonstrate reversible error because Cutts and the CTA, the alleged indispensible parties, were permitted to present their arguments to the trial court and were permitted to intervene in the appeal to this court.
Next, appellants argue that mandamus was an inappropriate remedy because disclosure of the records in question involved an exercise of appellants' discretion. While this record indicates utter good faith on appellants' part in denying access to the records in question, their legal conclusions were wrong. Disclosure of public records is not a discretionary act; it is a mandatory act.
Section 119.01, Florida Statutes (1981), declares the public policy of the state in unequivocal terms: "It is the policy of this state that all state, county, and municipal records shall at all times be open for a personal inspection by any person." "Public records" means:
"all documents, papers, letters, maps, books, tapes, photographs, films, sound recordings or other material, regardless of physical form or characteristics, made or received pursuant to law or ordinance or in connection with the transaction of official business by any agency." Section 119.011(1), Florida Statutes (1981).
The Supreme Court expanded on that definition in Shevin v. Byron, Harless, Schaffer, etc., 379 So.2d 633, 640 (Fla. 1980), wherein it described a public record in the Act as "any material prepared in connection with official agency business which is intended to perpetuate, communicate, or formalize knowledge of some type." Section 119.07(1)(a) directs that:
"Every person who has custody of public records shall permit the records to be inspected and examined by any person desiring to do so, at reasonable times, under reasonable conditions, and under the supervision by the custodian of records or his designee."
The trial court properly found the grievance records of teachers employed by the Palm Beach County School Board were public records within the purview of the Act. In addition, the trial court was correct in shunting aside the argument that the collective bargaining contract between the CTA and the School Board established the confidentiality of the subject records, for to allow the elimination of public records from the mandate of Chapter 119 by private contract would sound the death knell of the Act. Thus, appellee's request to examine the Cutts grievance did not trigger an exercise of discretion by appellants and mandamus was the appropriate vehicle to remedy the refusal of the records custodian to accede to that request.
Next, we address appellants' contention that the trial court's order requiring disclosure violates Cutts's right of privacy guaranteed by the Federal Constitution and the newly adopted (November 4, 1980) Article I, Section 23, of the Florida Constitution, thus rendering Florida's Public Record Law, Chapter 119, unconstitutional as applied.
*351 We learn from the Shevin case that the Supreme Court of the United States has construed the Federal Constitution to protect privacy interests in only three categories of cases:
"While there is no right of privacy explicitly enunciated by the Bill of Rights, the Supreme Court has construed the federal constitution to protect certain privacy interests. These protected interests can be said to comprise the federal constitutional right of privacy. This right of privacy cannot be characterized as a general right because its application has been strictly limited. It has been characterized as consisting of three protected interests: an individual's interest in being secure from unwarranted governmental surveillance and intrusion into his private affairs; a person's interest in decisional autonomy on personally intimate matters; and an individual's interest in protecting against the disclosure of personal matters." 379 So.2d at 636.
It is clear from the foregoing discussion of privacy interests that the first two categories are not relevant to a case such as we have here. Although the third category appears more nearly applicable, following the lead of the Shevin court (379 So.2d at 638), we, too, will be guided by the decision in Paul v. Davis, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), since the United States Supreme Court has not located the parameters of this category of privacy interests. In Paul v. Davis, Davis sought damages and injunctive relief to prohibit city and county officials who had placed his name and picture on a police flyer of active shoplifters from distributing the flyer to merchants. The United States Supreme Court noted that Davis's claim was based not on a challenge to the State's ability to restrict his freedom of action in a private matter but rather on a claim that the State may not publicize a record of an official act such as an arrest. The Shevin court noted that:
"The principles involved in Paul and in the present case are strikingly similar. Both involve the release of information concerning an official act of government that is allegedly damaging to the protestants. In Paul, the Court found no privacy interest to protect, and in the present case we reach the same conclusion. The Supreme Court may some day breathe life into the privacy interest asserted by respondents, but, until that occurs, we conclude that there does not exist, under the facts of this case, a constitutionally protected interest sufficient to prevent the public from seeing the consultant's papers." 379 So.2d at 638.
We echo the Florida Supreme Court's position in Shevin as regards appellants' claim of a right of privacy under the Federal Constitution.
The Shevin case also would support a holding that prior to the November 4, 1980, adoption of Article I, Section 23, the Right of Privacy provision of the Florida Constitution, our state constitution guaranteed no right of privacy. However, by its terms Article I, Section 23, does not limit the public right of access to public records: "This section shall not be construed to limit the public's right of access to public records and meetings as provided by law." Therefore, adoption of Article I, Section 23, has no adverse effect on Chapter 119, Florida Statutes.
Appellants' final point on appeal suggests the trial court erred by providing in the peremptory writ relief broader than the relief set forth in the alternative writ. The general rule is that a peremptory writ of mandamus must conform to the alternative writ. Cipolloni v. Lewis, 375 So.2d 629 (Fla. 4th DCA 1979); 21 Fla.Jur., Mandamus § 124. The alternative writ issued herein directed the production of the grievance filed by Cutts, whereas the peremptory writ ordered appellants to "open their records for inspection in accordance with Florida Chapter 119 ... and afford [appellee] the opportunity to inspect the records pursuant to Florida Statutes." The peremptory writ is undeniably broader than the alternative writ. However, our study of the record convinces us that counsel's argument led the trial court to believe that *352 if the court ruled against appellants' various privacy and confidentiality arguments, the court's mandate should require appellants to exhibit to appellee all relevant public records not exempt under Chapter 119. We interpret the peremptory writ to mean just that. Thus, if any controversy develops over alleged exempt documents the trial court is in a position to resolve those disputes in the enforcement of its own orders.
While we have dealt with the parties' arguments on the foregoing point as though Florida Rule of Civil Procedure 1.660 were still in effect, we note that that rule was repealed effective January 1, 1981 (The Florida Bar, 391 So.2d 165, 177 (Fla. 1980), and that mandamus proceedings in the circuit court are governed by Florida Rules of Appellate Procedure 9.030(c)(3) and 9.100.
For the foregoing reasons we affirm the judgment appealed from.
BERANEK and HURLEY, JJ., concur.